UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAROLYN ANN LUCAS,

       Plaintiff                         Civil Action No. 15-13562

v.

                                     HON. R. STEVEN WHALEN
                                     U.S. Magistrate Judge

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____/

## OPINION AND ORDER

Plaintiff Carolyn Ann Lucas brings this action pursuant to 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act. Both parties have filed summary judgment motions. For the reasons set forth below, Defendant's motion for summary judgment [Dock. #20] is GRANTED and Plaintiff's motion for summary judgment [Dock. #14] is DENIED.

## I. PROCEDURAL HISTORY

On August 20, 2012, Plaintiff filed an application for DIB, alleging disability as of April 23, 2012 (Tr.86-87). After the initial denial of the claim, Plaintiff requested an administrative hearing, held on February 19, 2014 in Oak Park, Michigan before Administrative Law Judge ("ALJ") Timothy Christensen (Tr. 20). Plaintiff, represented by

-1-

attorney Barry Keller, testified (Tr. 26-32), as did Vocational Expert ("VE") Kelly Stroker (Tr. 33-35).   On March 27, 2014, ALJ Christensen found that Plaintiff was not disabled through the date last insured of December 31, 2013 (Tr.  10-16).  On August 21, 2015, the Appeals Council denied review (Tr. 1-3).  Plaintiff filed for judicial review of the final decision on October 10, 2015.

## II.  BACKGROUND FACTS

Plaintiff, born November 19, 1967, was 46 when the ALJ issued his decision (Tr. 16, 86).  She received a GED and holds certified nurse assistant ("CNA") credentials (Tr. 102).  She worked previously assisting disabled individuals with personal care tasks and activities of daily living (Tr. 103).  She alleges disability due to shoulder, back, and knee injuries (Tr. 101).

### A.    Plaintiff's Testimony

Plaintiff offered the following testimony:

She lived in a one-story house in Detroit, Michigan with her daughter, 22, son, 15, and grandson (Tr. 26).  She seldom drove due to knee pain (Tr. 26).  Prior to becoming to disabled, she worked as a CNA but also had past relevant work as an assembler and as a security guard (Tr. 27).  She was unable to return to any of her former work due to her inability to lift more than 10 pounds, bend, or stoop (Tr. 27).

Plaintiff worked up until the time of an April, 2012 vehicle accident (Tr. 28).  She was now unable to maintain her house and relied on her daughter to do the laundry (Tr. 28).  She

did not perform any household chores and was unable to walk significant distances (Tr. 29).

She was unable to stand for more than six minutes or sit for more than 30 minutes at a time

(Tr. 29). She also experienced uncontrolled hypertension and the night before the hearing,

had sought emergency treatment for blood pressure readings of 215 over 120 (Tr. 30). She

took blood pressure medication and Prilosec for acid reflux (Tr. 30). She acknowledged that

the hypertension and acid reflux were attributable to obesity (Tr. 30-31). She had gained

approximately 60 pounds since the April, 2012 accident (Tr. 31).

On a typical day, Plaintiff arose at 7:00 a.m. to help her son prepare for school (Tr.

32). She retired around 9:00 p.m. (Tr. 32). She experienced sleep disturbances due to pain

(Tr. 32). She did not take pain medication due to a dispute with her insurance company (Tr.

32).

## C.    Medical Evidence[1]

### 1. Treating Sources

April, 2012 emergency room records note Plaintiff's report of "sharp pressure-like"

low back and buttock pain following a motor vehicle accident (Tr. 159, 161). Treating

records note back and spine tenderness but a normal range of extremity motion (Tr. 161).

Imaging studies were negative for fracture or dislocation (Tr. 161, 164, 166, 170-171, 173).

An "Auto Clinic Note" from three days later notes Plaintiff's report of level "nine" out of ten

---

[1]Evidence pertaining to conditions unrelated to the disability claim has been
reviewed but are omitted from the present discussion.

neck, right shoulder, lower back, and right knee pain (Tr. 175). Plaintiff reported that she was unable to perform her job duties due to pain (Tr. 175). She was issued a "Disability Certificate" limiting her to lifting 10 pounds, good from April 27, 2012 to May 27, 2012 (Tr. 190). An MRI of the cervical spine showed disc bulges at C3-C4 and C5-C6 with mild encroachment (Tr. 175, 188, 215). An MRI of the lumbar spine showed a disc bulge with mild encroachment of the epidural space but no disc herniation (Tr. 187, 213, 216). The study was otherwise normal (Tr. 187). She was diagnosed with cervical strain and prescribed Vicodin, Soma, and physical therapy (Tr. 175). She received a certificate of disability for an additional month (Tr. 191). In June, 2012, Plaintiff reported ongoing lower back and knee pain (Tr. 177). She reported some improvement with physical therapy (Tr. 181). The following month, Plaintiff was re-prescribed Vicodin after reporting continuing neck, right, shoulder, and lower back pain (Tr. 179). She was limited to lifting more than 10 pounds until October 25, 2012 (Tr. 192-196). August, 2012 physical therapy notes state that Plaintiff was cautioned to bend and twist with care (Tr. 203). Treating records from the same month note Plaintiff's report of neck, lower back, and right knee pain (Tr. 211). She noted that physical therapy gave her only temporary relief (Tr. 210). Physical therapy was re-prescribed in August, October, and November, 2012 (Tr. 197, 201, 204, 221).

An April, 2013 x-ray of the pelvis was unremarkable (Tr. 234-235). In June, 2013, Plaintiff reported continuing knee pain (Tr. 227).

-4-

## 2.  A Non-Examining Source

In January, 2013, Twaide Langham, D.O. performed a non-examining review of the treating records on behalf of the SSA, finding that while Plaintiff was limited to 10 pounds lifting for about four months after the April, 2012 accident, she was subsequently capable of lifting 20 pounds occasionally and 10 frequently; sitting, standing, or walking for six hours in an eight-hour workday; and pushing/pulling without limitation (Tr. 42).  He limited Plaintiff to occasional stooping, kneeling, crouching, crawling, and climbing of ramps or stairs but precluded all climbing of ladders, ropes, or scaffolds (Tr. 42).  He noted that the claims of knee limitations were unsupported by imaging studies and that Plaintiff was able to cook, clean, shop by computer, and attend church (Tr. 43).

### D.   Vocational Expert Testimony

VE Kelly Stroker classified Plaintiff's former work as a CNA as semiskilled and exertionally medium (heavy as performed); production worker, unskilled/light (light and medium as performed); and security guard, semiskilled/light[2] (Tr. 33).  The ALJ then described a hypothetical individual of Plaintiff's age, education, and work history:

This individual is limited to light work, could perform postural activities

---

[2] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

occasionally, however should not be required to climb ladders, ropes, or scaffolds, would require a sit/stand option, but by exercising that option would not be off task, and should not be required to work around hazards.  Could that individual do any of claimant's past work ?(Tr. 34).

The VE stated that the above limitations would preclude all of Plaintiff's past relevant work but allow for the work of an exertionally light assembler (1,500 jobs in the regional economy); inspector (1,000); and packager (1,500) (Tr. 34).  She  testified that if the hypothetical individual were limited to sedentary work, she could  perform the work of a surveillance monitor (1,000) and assembler (sedentary) (1,000) (Tr. 34).  The VE found that if the same individual were "off task 20 percent or more of the [work]day," or, were required to miss two or more days of work each month, all competitive employment would be eliminated (Tr. 35).  The VE stated that her testimony was consistent with the information found in the *Dictionary of Occupational Titles* ("*DOT*"), adding that her testimony regarding the "sit/stand" option was based on her own professional experience (Tr. 35).

In response to questioning by Plaintiff's attorney, the VE testified that the need to be off task for 15 percent or more of the work period; take unscheduled breaks; or, miss work (unscheduled) more than once a month would preclude all work (Tr. 72-73).

### E.  The ALJ's Decision

Citing the medical transcript, ALJ Christensen found that through the December 31, 2013 expiration of benefits, Plaintiff experienced the severe impairments of "degenerative disc disease in the cervical and lumbar spine, hypertension, obesity, [and] degenerative joint disease in the right knee" but that none of the  conditions met or medically equaled an

impairment found in Part 404 Appendix 1 Subpart P, Appendix No. 1 (Tr. 12-13). The ALJ found that through December, 31 2013, Plaintiff retained the Residual Functional Capacity ("RFC") for light work with the following additional limitations:

> [A] sit/stand option where she would not be off task while changing positions, only occasional postural movements, and no ladders, ropes, scaffolds, or work hazards (Tr. 13).

Citing the VE's testimony, the ALJ found that while Plaintiff was unable to perform any of her past relevant work, he could perform the light and sedentary jobs of assembler, inspector, and surveillance occupations (Tr. 15).

The ALJ discounted Plaintiff's allegations of disability. He noted that the medical record was "relatively bland," observing that the medical records created prior to the expiration of benefits did not support the disability claim (Tr. 14). He noted that the MRI of the lumbar spine showed only "mild disc degeneration" and that Plaintiff did not sustain "fractures or dislocations" in the April, 2012 accident (Tr. 14). The ALJ also noted that Plaintiff "was not very credible at the hearing" (Tr. 14). He found that her claims of vascular and knee problems were unsupported by the treating records (Tr. 14). He cited Plaintiff's acknowledgment that her pain was relieved "with medication and physical therapy" (Tr. 14).

### III.  STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6ᵗʰ Cir. 1985). Substantial evidence is more

than a scintilla but less than a preponderance.   It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*   800 F.2d 535, 545 (6th Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.  FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment

-8-

listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V.  ANALYSIS

### Substantial Evidence Supports the ALJ's Determination

Plaintiff argues, in effect, that the ALJ did not consider that her medical care was compromised by health insurance limitations.  *Plaintiff's Brief,* 13, *Docket #14,* Pg ID 25. She also contends that the finding that her claims were not credible did not take into account her limited access to health care.  *Id.*

Plaintiff is correct that under SSR 96–7p, 1996 WL 374186, *7 (1996), an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." *See also* SSR 82–59, 1982 WL 31384, *4 (1982) (ALJ must consider an individual's claim that she is unable to afford the prescribed treatment).

However, the ALJ did not err in determining, despite the professed insurance

limitations, that the medical transcript contained sufficient evidence to support a non-disability finding.  He noted that the MRIs of the cervical and lumbar spine were negative for disc herniation and showed only mild abnormalities (Tr. 13).  He cited the April, 2013 unremarkable imaging studies of the left femur and pelvis (Tr. 13).  The ALJ noted that to the extent that Plaintiff experienced some level of discomfort despite the normal imaging studies, she obtained some relief from medication and physical therapy (Tr. 14).  The ALJ also noted that despite Plaintiff's allegations of uncontrolled hypertension, she was not taking blood pressure medication at the time her entitlement to DIB expired (Tr. 14).

Plaintiff contends that the ALJ erred by declining to order a consultative physical examination.  However, determination of whether a consultative examination is necessary is within the discretion of the ALJ and appropriate only where the existing record "is insufficient or inconsistent." 20 C.F.R. § §  404.1520b, 404.1520b(c)(3).   The current transcript is neither.  The extensive and mostly unremarkable imaging studies  undermine Plaintiff's allegations of disability.   None of her treating sources found that she was incapable of all work.   While she was restricted to lifting 10 pounds between April and November, 2012, none of the evidence indicates that she was unable to perform any work for a period of a least 12 months as required for a disability finding under 42 U.S.C. §423(d)(1)(A).

Because the ALJ's credibility determination and the ultimate finding of disability were well supported and explained, the administrative determination will remain undisturbed.

*See Cruse v. CSS*, 502 F.3d 532, 542 (6th Cir. 2007)(ALJ's credibility determination entitled to deference)(*citing Walters v. CSS,* 127 F.3d 525, 531 (6ᵗʰ Cir. 1997); *Anderson v. Bowen*, 868 F.2d 921, 927 (7th Cir. 1989))(*citing Imani v. Heckler*, 797 F.2d 508, 512 (7th Cir. 1986))(An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record'").

Accordingly, the ALJ's determination that Plaintiff was capable of a significant range of unskilled light work as of December 31, 2013 is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level and should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment [Dock. #20] is GRANTED and that Plaintiff's motion for summary judgment [Dock. #14] is DENIED. IT IS SO ORDERED.

                                         s/R.  Steven Whalen
                                         R. STEVEN WHALEN
                                         UNITED STATES MAGISTRATE JUDGE

Dated:  March 31, 2017

-11-

CERTIFICATE OF SERVICE

I hereby certify on March 31, 2017, that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to non-registered ECF participants.

s/Carolyn Ciesla
Case Manager to
Magistrate Judge R. Steven Whalen